# Whitney v. Jasper Land Company.

*Proceeding to Substitute Lost Records.*

1. *Sufficiency of plea to petition.*—A plea to a petition to substitute lost records in which the defendants "deny all the allegations contained in said petition" is not demurrable.

2. *Proof of instrument and record to be substituted.*—On an application for the substitution of a lost will and the record of its probate, the court is to be satisfied from the evidence adduced, of the former existence and contents of the instrument and the record of it, and may receive affidavits, or any legitimate testimony, oral or written. The substitution should be

32

[Whitney v. Jasper Land Company.]

made only on clear and satisfactory evidence of the former existence, contents, and loss of the record proposed to be substituted.

3. *Ancient transactions.*—The law does not require that an ancient transaction shall be proved with such fullness of detail as if it had been of recent date; but a party is not entitled to credit for the difficulty in producing proof brought about by his own delay and fault, as against those adversely interested, who contributed nothing to induce such delay.

4. *Legal sufficiency of record proposed to be substituted.*—When a substantial copy of the lost or destroyed record is satisfactorily proven, it must, on application, be substituted, and when substituted it has the same effect and efficiency, no more nor less, than the original would have had; the legal sufficiency of the record to support the final judgment or decree rendered, or whether regular or irregular, or whether error intervened in the proceedings ending in the judgment or decree rendered, is not to be considered.

5. *Judicial notice of public officers.*—The courts take judicial notice of all public officers—past as well as present—such as judges of probate and county courts, clerks of courts, sheriffs, justices of the peace, and all state officers, the extent of their authority, the dates of their commissions, and the expiration of their respective terms of office. If not sufficiently advised, the fact may be ascertained by reference to authoritative means of knowledge, and where the court admits proof in aid of his judicial knowledge of such facts, if error, it is without injury.

6. *Evidence of contents of ancient documents.*—The effort of a witness to give literally and exactly the contents of extended documents, from memory, after the long lapse of time, discounts such evidence to the point of rendering it weak and untrustworthy; it begets its own infirmity, rendering it too unreliable and uncertain to be trusted in the determination of great property interests.

APPEAL from Walker Probate Court.

Tried before Hon. H. L. WATLINGTON.

The facts are sufficiently stated in the opinion. The court, trying without a jury, denied the petition, and petitioner appeals.

DANIEL COLLIER, for appellant, cited, Green. on Ev. 509; 13 A. & E. Encyc. of Law, 1157; *Stewart v. Conner*, 9 Ala. 803; *Benner v. Bank*, 9 Wheaton, 581; *Derritt v. Alexander*, 25 Ala. 265; *Garrett v. Lynch*, 45 Ala. 204; 20 Am. and Eng. Enyc. of Law, 603, n. 1; *Smith v.*

*Wert,* 64 Ala. 34; Code 1886, §558 *et seq; Peddy v. Street*
87 Ala. 301; *Ward v. State,* 78 Ala. 456; 24 S. W. 444;
*Pruitt v. Pruitt,* 43 Ala. 77; *Lilly v. Larkin,* 66 Ala. 110;
*Shiver v. Shiver,* 45 Ala. 353.

COLEMAN & BANKHEAD and T. L. SOWELL, *contra,*
cited, *Cary v. State,* 76 Ala. 78; *Gordon v. Tweedy,* 74
Ala. 237-8; 1 Ency. Pl. and Pr. 321 and 336; *Dabney v.
Mitchell,* 66 Ala. 505; *McLendon v. Jones,* 8 Ala. 301;
*Adkinson v. Keel,* 25 Ala. 551; 20 Am. & Eng. Encyc. of
Law, 3; 13 *Ib.* 1133, note 2; *Jacques v. Horton,* 76 Ala.
238; *Skeggs v. Horten,* 82 Ala. 352; *Moore v. Ewing,* 1
N. J. L. 144; *Apperson v. Dawdy,* 82 Va. 1766; *Bozeman
v. Bozeman,* 82 Ala. 389; *Balkam v. Woodstock Inn.
Co.* 11 Lawy. Rep. Ann. 230.

HARALSON, J.—Proceeding by petition in the pro-
bate court of Walker county, filed therein on the 9th of
January, 1897, to substitute the will of Hiram C. Whit-
ney and the probate and record thereof in said court,
alleged to have been destroyed.

The errors assigned are, 1st, the overruling of pe-
titioners' demurrer to defendants' plea number 1. That
plea was, "They [the defendants] deny all the allega-
tions contained in said petition." What the demurrer
to this plea was, does not appear, but the judgment en-
try recites that it was overruled. This plea, certainly,
was not liable to any conceivable demurrer. The other
assignments of error, besides the 6th and 7th, set up
in different forms the same thing,—that the court erred
in refusing to grant the prayer of the petition to sub-
stitute said will. The 6th and 7th assignments, relate
to the admission of evidence against the petitioners.

The case was tried upon issue joined on the first plea,
which issue was found in favor of appellees, defendants
below.

The will was alleged to have been executed by the
deceased on the 18th September, 1839, by which he gave
all his personal property absolutely to his wife, Mi-
nerva Whitney, and his real estate, which is spe-
cifically described in the alleged copy of the will pro-
duced to be substituted, to his said wife, for her life,
and after her death to his four children who are named,
to be equally divided between them. The petition was

filed by Issac M. and E. W. Whitney, and alleges that they are the sole surviving children, heirs, devises and legatees of the testator. What purports to be a copy of said will, and a copy of the minute entry of the probate thereof, are attached to the petition as exhibits A and B, and made a part thereof. Said copy of the record of the probate of said bill, purports to have been made and entered in said court, on the 7th of December, 1839, and purports, also, to have been made by one Roland J. Murphy, judge of the orphans' court of Walker county.

The case was tried on affidavits for the most part. The petitioners introduced seven of these, all made in 1891, except one, made in 1890. They examined but two witnesses orally, and introduced a showing as to what an absent witness would have sworn, if present.

The application for substitution, on demurrer thereto in the court below, was held to be sufficient. On the hearing of such an application, the court is to be satisfied from the evidence adduced, of the former existence and contents of the instrument and the record of it, which is proposed to be substituted, and may receive affidavits, or any legitimate testimony, oral or written. The substitution should be made, as is held, only on clear and satisfactory evidence of the former existence, contents and loss of the record proposed to be substituted.—*McLendon v. Jones,* 8 Ala. 298; *Adkinson v. Keel,* 25 Ala. 551; *Pruit v. Pruit,* 43 Ala. 73; *Dabney v. Mitchell,* 66 Ala. 496. It may be added that the law does not require that an ancient transaction shall be proved with such fullness of detail as if it had been of recent date.—*Smith v. Wert,* 64 Ala. 34.

It is also well settled, that on a motion to substitute, the legal sufficiency of the record, as proposed to be substituted, to sustain the final judgment or decree that was rendered, does not arise. Whether the proceedings were regular or irregular, or whether error intervened in the proceedings ending in the judgment or decree rendered, is not to be considered. When a substantial copy of the lost or destroyed record is satisfactorily proved, it must be substituted for the original, and when substituted, it has the same effect and efficacy, no more nor less, that the original would have had.—*Ward v. The State,* 78 Ala. 455, 457; *Peddy v. Street,* 87 Ala. 299.

[Whitney v. Jasper Land Company.]

The petitioners, as has been stated, introduced without objection, the affidavits of seven persons, taken, six of them in 1891, and one of them in 1890, and examined two witnesses *viva voce*, and, also the showing of an absent witness, named Wm. A. Hewlett, admitted for the purposes of a trial.

The will sought to be substituted, purports to have been executed, as has been stated, on the 18th September, 1839, and to have been probated on the 7th of December of that year. This proceeding for the substitution of the will and the record of its probate, both alleged to have been destroyed, was not commenced until the 9th of January, 1897. It was shown that the destruction of the court house of Walker county, where it is alleged and shown the original will and the record of its probate were destroyed, was consumed by fire in a year, some time in the seventies. After such a great lapse of time, the difficulty of procuring evidence of the existence and contents of the will and the record of its probate, has been very greatly enhanced. This difficulty has been brought about, by the delay and fault of those interested in such a substitution, if they desired it, from which they are entitled to no credit, certainly as against those adversely interested in the proceeding, who contributed nothing to induce such delay, and to whose fault, in any respect, any earlier effort of petitioners to substitute is not attributable. It appears that in 1890 and 1891, these petitioners contemplated such a proceeding, for, in those years, they procured the affidavits, on which they rely and which they used in their efforts to cause the substitution to be made. Some of these affiants, as shown, were then of great age, and all of them must have been well stricken in years. In the natural order of events, some, if not the most of them, have since died, rendering it impracticable for the defendants, if they desired to do so, to have the benefit of an oral examination of them, to test their memories, in reference to the verbal contents of papers as to which they swore with amazing certainty of detail, after the lapse of several decades. Six of the affiants, three of whom signed their names by a cross, from which it is inferable they could not write, set out the verbal contents of said will, from having seen it, or heard it read, or read it on the records, a great many

[Whitney v. Jasper Land Company.]

years before, giving a long list of the land office numbers of the lands disposed of by the will, the date of the will, its executor and witnesses thereto, and all, in the identical language, except perhaps, with a slight difference in one or more instances in the numbers of the land, not greater than would likely occur in copying many times by one hand, the same instrument. Three of the affiants also undertook the extraordinary feat in memory of stating the exact words of what purports to be the minute entry of probate of the will. The inference is palpable, that these affidavits were drawn for affiants, and that they swore to them as prepared, not with the intent, let it not be admitted, of swearing falsely, but to do the best they could in the spirit of accommodation, about a matter which, in the very nature of things, was greatly obscured and faded from the memory of men in the long lapse of intervening time. The very effort at literal accuracy touching documents so ancient, about which we all know the great mass of men have but faint memories, discounts such evidence to the point of rendering it weak and untrustworthy. It begets its own inherent infirmity, rendering it too unreliable and uncertain to be trusted in the determination of great property interests.

Let us refer to other discrediting features of this evidence. John Irwin, one of the petitioners' affiants, was, as appears, about eigthy years old, when he made his affidavit. He was shown to be very weak and infirm in mind as in body. He swore he was clerk of the county and orphans' court and judge of probate of Walker county continuously, from 1842 to 1853. We fail to see how the same person could be, in that time, both clerk and judge, since these offices under the law were distinct and of different tenures.—Clay's Dig. 296, §1; Const. 1819, Art. V, §15.

The three affiants who undertook to prove literally the minute entry of the probate of said will, each swore that it was signed by "Roland J. Murphy, Judge of Orphans' Court, Walker County, Alabama." The defendants introduced the affidavits of three witnesses,—Benson, Thompson and McCarnes,—who swore that they knew and were acquainted with said Murphy at the time it is alleged he acted as judge in probating said will, and that he was not judge at that time. It is well

[Whitney v. Jasper Land Company.]

settled again, that courts take judicial knowledge of all public officers, such as judges of probate and county courts, clerks of courts, sheriffs, justices of the peace, and all state officers, the extent of their authority, the dates of their commissions and the expiration of their respective terms of office. "The general principle upon which this class of facts is received without averment and proof, is that the court knows; and if it is not sufficiently advised, the fact may be ascertained by inquiry and reference to authoritative means of knowledge." *Keller v. Moore,* 51 Ala. 340; *Beggs v. The State,* 55 Ala. 108; *Timberlake v. Brewer,* 59 Ala. 109; *Coleman v. The State,* 63 Ala. 93; *Gordon v. Tweedy,* 74 Ala. 232; *Sandlin v. Anderson,* 76 Ala. 403; *Cary v. The State,* 76 Ala. 78; 12 Am. & Eng. Encyc. of Law, 151. The court below admitted the certificate of Secretary of State, Jackson, under the seal of the state, certifying that the records in the office of Secretary of State show, that Edward G. Musgrove was commissioned judge of the county court of Walker county, December 13th, 1833, and that next commission that was issued was to John E. Clancey, January 9th, 1840. The term of office of these judges was six years. He also stated in a letter to the defendants' solicitors signed by him as such secretary, that the records of his office show, that said Edward G. Musgrove was judge of said county court, on the 7th of December, 1839, the date said will purports by the petition and affidavits of petitioners to have been probated. This certificate and letter, were offered and admitted, in aid of the judicial knowledge of the court, against the objection of petitioners, on the ground that they were illegal and irrelevant. If this was error, it was error without injury, since the court had judicial knowledge of the facts certified by said Secretary of State. From the evidence in the cause, and from the court's judicial knowledge, it thus appears that neither said Roland J. Murphy, nor the said John Irwin was judge of said county court, the one at the time the petitioners' affiants swear he was, and the other at the time he himself swore he held said office. Such mistakes on the part of these affiants, add cumulative force to the contention, that they were forgetful or were ignorant of the facts about which they deposed, rendering their evidence far too uncertain and unreliable to be trusted for the pur-

poses for which their affidavits were used, however honestly and well disposed they deposed.

We find no fault with the judgment of the judge trying the cause in refusing substitution of these papers on the evidence adduced.

Affirmed.